UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARTIN MANLEY,[1]

    Plaintiff,

v.

YVONNE ROSE, et al.,

    Defendants.
_____/

Hon. Janet T. Neff

Case No. 1:11-CV-150

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Rose's Motion for Summary Judgment. (Dkt. #14). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted** and this matter terminated.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (Dkt. #1). On January 11, 2011, Plaintiff was in the law library using a typewriter. A window in the library was open and when it later began snowing, snowflakes entered through the window and landed on Plaintiff's typing paper. Plaintiff asked the librarian, Yvonne Rose, to close the window, but she refused instructing Plaintiff to instead "cover [his] papers." Plaintiff discussed the matter with a prison guard who informed Plaintiff that he "couldn't do anything about it." Plaintiff then told Rose that he "was going to file

---

[1] Plaintiff refers to himself in his pleadings as Marlin Manley; however, Plaintiff's name is Martin Manley. *See* Martin Lee Manley, available at http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=207599 (last visited on August 16, 2011). Marlin Manley is simply an alias. *Id.* The Court, therefore, shall refer to Plaintiff by the name Martin Manley.

another grievance on her because he had a[] right not to be subjected to such conditions." The following day, Rose charged Plaintiff with creating a disturbance, a misconduct violation. Rose charged Plaintiff with a misconduct violation in retaliation for Plaintiff having previously filed grievances against her "for unprofessional acts." Plaintiff was found guilty of the misconduct charge by Hearing Officer M. Lauer. On January 26, 2011, Rose charged Plaintiff with being out of place, a misconduct violation, for failing to appear at the law library. Rose failed to place Plaintiff's name on the law library call-out sheet as retaliation for Plaintiff filing a grievance against her. Plaintiff was found not guilty of this charge.

Plaintiff initiated the present action on February 10, 2011, against Yvonne Rose and M. Lauer. Plaintiff alleges that Rose unlawfully retaliated against him in violation of his First Amendment and Fourteenth Amendment rights. Plaintiff further alleges that Lauer "failed to base her decision on the preponderance of the evidence," and thereby violated his Fourteenth Amendment right to due process. Plaintiff seeks injunctive and monetary relief. Plaintiff's claim against Defendant Lauer was subsequently dismissed for failure to state a claim. (Dkt. #5). Defendant Rose now moves for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317,

325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Fourteenth Amendment Claim**

As noted above, Plaintiff alleges that Defendant Rose's allegedly retaliatory conduct violated his rights under both the First and Fourteenth Amendments to the United States Constitution. However, because Plaintiff's right to be free from unlawful retaliation is sufficiently protected by the First Amendment, his Fourteenth Amendment claim must be dismissed.

In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court addressed the interaction between substantive due process and those rights specifically protected by the Bill of Rights, as well as the proper constitutional foundation upon which to base a § 1983 action.

In that case, Albright was charged with selling a substance that looked like an illegal drug. Following a preliminary hearing, Albright was bound over for trial; however, the court later dismissed the charges because the offense with which Albright was charged did not state an offense under Illinois law. Albright subsequently initiated a § 1983 action in which he charged Oliver, a detective involved in the case, with depriving him of his Fourteenth Amendment substantive due process rights by subjecting him to criminal prosecution without probable cause. *Id.* at 268-70.

The Court observed that substantive due process protection had "for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Id.* at 272 (citing *Planned Parenthood of Southeast Pa. v. Casey*, 505 U.S. 833, 847-849 (1992)). The Court noted the dissimilarity between Albright's claim and the substantive due process rights recognized previously, and further noted its reluctance to expand the concept of substantive due process. *Id.* at 271-72.

The Court then discussed the fact that a number of the protections contained in the Bill of Rights have been made applicable to the states via the Fourteenth Amendment. The Court observed that this process has resulted in the substitution of the specific guarantees of these portions of the Bill of Rights for the more generalized language of the Fourteenth Amendment. *Id.* at 272-73. The Court, therefore, concluded that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Id.* at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Applying this standard, the Court concluded that Albright's allegations directly implicated the Fourth Amendment, pursuant to which he must bring his claim, because substantive due process could afford him "no relief." *Id.* at 274-75.

Here, Plaintiff alleges that Defendant Rose subjected him to unlawful retaliation thereby violating his right to engage in constitutionally protected conduct (e.g., the filing of prison grievances). This right is adequately protected by the First Amendment. *See, e.g., Rodgers v. Hawley*, 14 Fed. Appx. 403, 411 n.4 (6th Cir., June 22, 2001) (recognizing that "a retaliation claim asserted under an enumerated constitutional right should be analyzed under that right rather than the more amorphous substantive due process standard"). Therefore, as in *Albright*, substantive due process can provide Plaintiff no relief. Accordingly, the undersigned recommends that Plaintiff's Fourteenth Amendment claims against Defendant Rose be dismissed.

## II.     Exhaustion

Defendant Rose asserts that Plaintiff's First Amendment retaliation claims must be dismissed because Plaintiff has failed to properly exhaust such.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine

whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007) articulates the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process

and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P-Q. The policy provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶¶ W-X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by policy, e.g., the regional health administrator for grievances concerning health care issues. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances. *Id.* at ¶ GG. The total grievance process from the filing of the Step I grievance to providing a response at Step III "shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." *Id.* at ¶ S.

In support of her motion, Defendant has submitted an affidavit executed by Richard Russell, Manager of the Grievance Section of the Michigan Department of Corrections. (Dkt. #15, Exhibit 2). Russell asserts that all Step III grievances are entered into a database maintained by the Grievance Section. Russell asserts that a search of this database reveals that since May 2009, Plaintiff

has pursued only three grievances through all three steps of the grievance process. Russell asserts that none of these grievances concern the incidents which give rise to Plaintiff's claims against Defendant Rose. *Id.*

Plaintiff has submitted no evidence calling into doubt or challenging Russell's assertions. Instead, Plaintiff advances three arguments in support of his opposition to Defendant's motion. First, Plaintiff asserts that "decisions made in minor misconducts hearings are non-grievable." Even if this assertion is accurate, such is irrelevant. The misconduct hearings did not address or resolve Plaintiff's allegation that he was charged with the misconduct in question for retaliatory purposes, but instead only resolved whether Plaintiff was guilty of the alleged misconduct. Plaintiff's claims against Defendant Rose do not challenge the decisions rendered in the misconduct hearings, but instead concern whether the misconduct charges were motivated by retaliatory animus which is grievable under MDOC policy. The Court, therefore, rejects this argument.

Plaintiff has also attached to his response, copies of a Step I grievance he filed. While not expressly stated, Plaintiff appears to have submitted this material to establish that he did, in fact, properly exhaust his claims against Defendant Rose. Any such argument fails for at least two reasons. First, the grievance in question (MTU-11-01-000340-14e) was filed before the incidents giving rise to the present action occurred. Secondly, Plaintiff has submitted no evidence that he pursued this particular grievance beyond Step I of the grievance process.

Finally, Plaintiff asserts that he "tried to exhaust his administrative remedies properly but was prevented by a prison official claiming that his step three grievance appeal was untimely when in fact it wasn't and therefore he was prevented from complying with the exhaustion requirement." The Court notes that this statement is not contained within an affidavit or sworn statement and, therefore,

does not constitute evidence. Plaintiff has also failed to submit any other evidence in support of this particular argument. Plaintiff's argument is, therefore, rejected.

For the reasons discussed above, the Court finds that Plaintiff has failed to properly exhaust any of the claims asserted against Defendant Rose. Accordingly, the undersigned recommends that Plaintiff's claims against Defendant Rose be dismissed without prejudice for failure to exhaust administrative remedies.

### III.    Motion for Summary Judgment

As noted above, on January 12, 2011, Defendant Rose charged Plaintiff with creating a disturbance and on January 26, 2011, she charged Plaintiff with being out of place. Plaintiff alleges that Defendant charged him with these misconduct charges as retaliation for grievances he had previously filed against her. Defendant argues, in the alternative, that she is entitled to summary judgment on the merits of Plaintiff's retaliation claims.

The elements of a First Amendment retaliation claim are well known: (1) the plaintiff was engaged in constitutionally protected conduct, (2) the plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by the plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). Defendant does not challenge that Plaintiff was engaged in protected conduct or that the issuance of a misconduct ticket can constitute a sufficiently adverse action. Defendant argues, however, that Plaintiff cannot establish the requisite causal element to maintain his retaliation claims.

To satisfy the causation element, Plaintiff must establish that the adverse action taken against him was motivated, at least in part, by the protected conduct in which he engaged. In examining this element, Defendant's subjective motivation is at issue and while Plaintiff is not subject to a heightened pleading standard, his burden is not trivial. As courts recognize, retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred"). Furthermore, if the official demonstrates that he "would have taken the same action even without the protected activity," he is entitled to summary judgment. *Eby*, 481 F.3d at 441-42.

1.   January 12, 2011 Charge

The Sixth Circuit has held that where an inmate alleges that a prison official falsely charged him with a misconduct violation for retaliatory purposes, the prison official is entitled to relief if the prisoner was found guilty (based on some quantum of evidence) of the misconduct violation. *See, e.g., Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir., Nov. 17, 2005) ("[a] finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim'") (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)). Implicit in this conclusion is that a finding that the allegedly retaliatory misconduct charge was supported by the evidence constitutes

sufficient evidence on the issue of causation to warrant summary judgment for the prison official. The Sixth Circuit has suggested that this general rule can be overcome if the prisoner introduces evidence that the prison official in question engaged in selective enforcement of the relevant prison rules and regulations. *See Eby*, 481 F.3d at 442. Plaintiff, however, offers neither allegation nor evidence that Defendant Rose has ever selectively enforced MDOC policies. Aside from "bare allegations of malice," Plaintiff offers no evidence that Defendant Rose charged him with creating a disturbance for a retaliatory purpose. The undersigned, therefore, recommends that Defendant Rose is entitled to summary judgment as to this claim.

### 2. January 26, 2011 Charge

As discussed above, when a party moving for summary judgment demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." Moreover, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." As Defendant correctly asserts, with respect to the causation element, Plaintiff has failed to submit evidence establishing the existence of a genuine issue of fact. Instead, Plaintiff offers nothing more than the conclusion that Defendant Rose's conduct was motivated by the protected conduct in which he engaged. Plaintiff's conclusion, however, is

unsupported by evidence or description of facts that can be established by admissible evidence. Accordingly, the undersigned recommends that Defendant Rose is entitled to summary judgment as to this particular claim.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendant's Motion for Summary Judgment</u>, (dkt. #14), be **granted** and this action terminated.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                    Respectfully submitted,

Date:  December 5, 2011                                   /s/ Ellen S. Carmody
                                                                                    ELLEN S. CARMODY
                                                                                    United States Magistrate Judge